**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark E Stuart, et al., | No. CV-20-00755-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Scottsdale, et al., | |
| Defendants. | |

Pending before the Court is Defendants City of Scottsdale (the "City"), Mayor W.J. "Jim" Lane (the "Mayor"), City Councilmembers Guy Philips, Kathy Littlefied, Suzanne Klapp, Linda Milhaven, Virginia Korte, and Solange Whitehead (the "City Councilmembers"), City Attorneys Bruch Washburn[1] and Eric Anderson (the "City Attorneys"), and City Manager Caroline Jagger's (excluding the City, "Individual Defendants") Motion to Dismiss Plaintiffs Mark E Stuart and Virginia G Stuart's ("Plaintiffs") Complaint. (Doc. 19). Plaintiffs have responded, (Doc. 24), and Defendants have replied, (Doc. 25). The Court now rules on the motion.[2]

---

[1] Defendants' motion apparently is not filed on Washburn's behalf. Although Washburn did not move for dismissal, the Court can dismiss him on its own motion because Plaintiffs' allegations against he and Anderson are identical. *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

[2] Plaintiffs have requested oral argument on the pending motion. Because both parties submitted memoranda and oral argument would not have aided the Court's decisional process, the request is denied. *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Inv'rs Grp. v. Pac. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

# I.    BACKGROUND

This case arises out of Plaintiff Mark Stuart's litigiousness and the consequences thereof. Specifically, after bringing an action against the City and several of its officials in Maricopa County Superior Court, the superior court issued a judgment against him awarding the City and other defendants $3,908.28 in taxable costs and $26,207.08 as a litigation sanction against Stuart. (Doc. 19-1 at 5–6).[3] Stuart, however, did not pay.

The City later sought to garnish funds from Mark Stuart to satisfy the unpaid judgment. Before the writs of garnishment issued, Mark Stuart informed Defendants that the marital community had not been a party to the underlying litigation and so defendants had no right to satisfy the superior court judgment using marital community assets (Doc. 1 at 29–30). In essence, Mark Stuart was maintaining that Defendants could never satisfy the judgment because it was valid only as against him, and he had no separate property.

Despite this, Defendants obtained the writs of garnishment resulting in, inter alia, a freeze of the Stuarts' Bank of America checking account and reducing the funds "to $250 from about $10,000" in one afternoon. (Doc. 1 at 5–6). As a result, Mark Stuart claims he had to declare bankruptcy and that Plaintiffs suffered a host of injuries, physical and otherwise. (*Id.* at 6–7).

In response, Plaintiffs filed a complaint in this Court bringing 11 "counts" for relief. Those counts are:

1. A 42 U.S.C. § 1983 claim against the Individual Defendants for retaliating against Plaintiffs in violation of the First Amendment.

2. A second § 1983 claim against the Individual Defendants for conspiring together to violate Plaintiffs' constitutional rights.

3. A third § 1983 claim against the City under the theory of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

4. A claim against the Individual Defendants for damages for violating Plaintiffs'

---

[3] Although the superior court's judgment and several other court documents were not attached to the complaint, the Court takes judicial notice of them. *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (taking judicial notice of undisputed matters of public record, such as state-court filings).

rights under Article 2, Section 6 of the Arizona State Constitution.

5. A state-law claim for wrongful garnishment against the Individual Defendants.

6. A state-law claim for abuse of process against only the City Attorneys.

7. A state-law intentional infliction of emotional distress ("IIED") claim against the Individual Defendants.

8. A "claim" for loss of enjoyment of life.

9. A claim for loss of consortium.

10. A defamation claim against only the City Attorneys.

11. A false light invasion of privacy claim against only the City Attorneys.[4]

(Doc. 1 at 8–23). The pending motion to dismiss under Federal Rules of Civil Procedure "Rules") 8, 12, 12(b)(1), and 12(b)(6) soon followed.

## II.    ANALYSIS

When a claim either lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory, the Court must grant a motion to dismiss for failure to state a claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Only a complaint that satisfies Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief," will survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 "does not require 'detailed factual allegations,'" it requires "more than an unadorned, the defendant-

---

[4] Defendants assert Counts 8 and 9 are not independent claims but damages theories. (Doc. 19 at 11–12). Plaintiffs appears to agree as to loss of enjoyment of life but disagree as to loss of consortium. (Doc. 24 at 15). Based on the parties' apparent agreement on loss of enjoyment of life, the Court will not consider it a cause of action. As for loss of consortium, Arizona's courts have described it as "a derivative claim, which means that the success of a loss-of-consortium claim is dependent on the success of another claim." *Martin v. Staheli*, 457 P.3d 53, 58 ¶ 17 (Ariz. Ct. App. 2019); *see also Barnes v. Outlaw*, 964 P.2d 484, 487 ¶ 8 (Ariz. 1998). *But see Howard Frank, M.D., P.C. v. Superior Court*, 722 P.2d 955, 956–57 (Ariz. 1986) (collecting cases using inconsistent terminology to refer to loss of consortium either as a cause of action or measure of damages). If a plaintiff succeeds on the underlying claim, he may obtain compensation for the attendant loss of his spouse's "love, affection, protection, support, services, companionship, care, society, and in the marital relationship, sexual relations." *Barnes*, 964 P.2d at 487 ¶ 10. Although—as a functional matter—the Court does not view Plaintiffs' Count 9 as raising anything but a potential measure of damages, it will not dismiss Count 9 based on Defendants argument because of Arizona's courts' frequent and recent references to it as a "claim" or "cause of action." *Martin*, 457 P.3d at 58 ¶ 16.

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). In other words, the complaint must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A complaint shows facial plausibility when it pleads factual content that allows a court to draw reasonable inferences as to the defendant's liability. *Id.* But when "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In sum, "the pleading must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alterations in original) (quoting *Twombly*, 550 U.S. at 556).

In ruling on the motion, the Court must accept as true all well-pleaded factual allegations. *Iqbal*, 556 U.S. at 679. Pleadings that offer no more than legal conclusions, however, are not entitled that assumption. *Id.* Finally, in the event that the Court finds the motion to dismiss to be well taken, it should sua sponte grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa County*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## A. Rule 8 and the Parties' Briefs

Defendants first ask the Court to dismiss the complaint in its entirety for failure to comply with Rule 8. After recounting over a page of generic legal rules, their argument does not extend beyond the following:

> [A] basic review of the [c]omplaint reveals that [Plaintiffs] have simply leveled generic, conclusory allegations against a large group of Defendants. The only specific allegations in the [c]omplaint are that the City . . ., acting through the City Attorney's Office, sought a writ of garnishment to collect upon a valid State court judgment which Stuart refused to pay. These bare facts alone fail to state a cause of action.

(Doc. 19 at 5). The Court rejects this cursory argument.

- 4 -

Although the complaint is not a model of clarity, it is not "impossible" to answer, *Stone v. Baum*, 409 F. Supp. 2d 1164, 1173 (D. Ariz. 2005) (describing a complaint as "impossible" to answer where it liberally used "the Defendants" across "64 pages and 265 predicate acts alleged . . . to support its 9 counts"), nor is it too bereft of factual allegations to state any claims at all, *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976) (explaining that a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant). It alleges that the City Attorneys, with the knowledge and approval (and, indeed, pursuant to an official policy and practice) of the Mayor and City Councilmembers, attempted to collect on a valid judgment by garnishing money from a bank account that apparently contained only community assets. In Plaintiffs' view, because the judgment did not name Virginia Stuart, it was only valid against Mark Stuart in his separate capacity and, thus, Defendants' garnishment of community funds that they were not entitled to amounted to retaliation for Mark Stuart's prior litigation efforts. Thus, it is not impossible to tell which Defendant did what and how those actions injured Plaintiffs.

Defendants' argument is itself conclusory. Defendants do not identify which allegations are so confusing and prolix that they cannot respond to whatever those allegations might be. Except for other arguments discussed later, neither do they identify what facts were missing under each claim that would have resulted in it being sufficiently pleaded. In the end, Defendants' Rule 8 argument simply and improperly seeks to dismiss the complaint essentially based on an argument that it could be clearer.

Although the Court rejects this argument, the Court notes that the briefing on the issues raised by both parties has been somewhat sparing. This has had consequences for the Court's resolution of the pending motion. For example, while Defendants mention that the defenses of absolute and qualified immunity entitle the Individual Defendants to "dismissal from this lawsuit," (*e.g.,* Doc. 19 at 7), they did not raise any argument or cite any authority addressing whether they would enjoy immunity from Plaintiffs' state-law claims. Because federal qualified immunity is not available for state-law claims, *Johnson*

*v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013), the Court has assumed that Defendants' immunity arguments address only Plaintiffs' § 1983 claims.

Most significantly, however, the parties' briefing has left unaddressed the issue that lies at the foundation of this lawsuit—the question whether the funds of Plaintiffs' marital community could be garnished to collect on a judgment that names only Mark Stuart. Somehow, that issue did not receive any attention until the reply. The Court does not address arguments made for the first time in reply. *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1002 (D. Ariz. 2011). Moreover, while Defendants begin by describing Plaintiffs' complaint as a "ruse," they later concede that there may be "a good faith legal debate over whether or not the judgment could be collected from the marital community." (Doc. 25 at 3). The propriety of the garnishment would seem quite critical to resolving several of the issues in this case. For example, lawfully collecting a valid litigation sanction obviously does not make for a First Amendment retaliation claim. But if Defendants garnished funds they knew they had no right to, that conclusion is less certain. Thus, for purposes of this motion only, the Court will assume that the garnishment action resulted in improper collection of funds from the marital community and will consider whether Plaintiffs have a claim for relief even operating under that assumption.

### B. Non-cognizable Claims

The Court will first address two of Defendants' arguments for dismissal that concern themselves with whether Plaintiffs have any claims at all. Specifically, Defendants have argued that Arizona law (1) does not recognize a tort claim for violating Article 2, Section 6 of the Arizona State Constitution and (2) recognizes a wrongful garnishment cause of action only when a creditor has "utilize[d] a statute allowing pre-judgment attachment of assets." (Doc. 19 at 10).

Article 2, Section 6 of the Arizona State Constitution broadly guarantees that "[e]very person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right." By its text, this provision is even more speech-protective than the First Amendment of the United States Constitution because it is phrased as "a guarantee of

- 6 -

1   the individual right to 'freely speak, write, and publish,' subject only to constraint for the

2   abuse of that right," rather than simply "a constraint on government." *Brush & Nib Studio,*

3   *LC v. City of Phoenix*, 448 P.3d 890, 902–03 ¶ 45 (Ariz. 2019) (collecting cases). Despite

4   the breadth of this right, however, "the Arizona Supreme Court has never held that Article

5   2, Section 6 creates a private right of action for damages." *Lankford v. Taylor*, No. CV 17-

6   02797-PHX-DWL (JZB), 2019 WL 4600369, at *9 (D. Ariz. Sept. 23, 2019) (citing *Cesare*

7   *v. County of Pima*, No. CV-14-02514-TUC-CKJ (EJM), 2015 WL 13741218, at *24 (D.

8   Ariz. Dec. 7, 2015)). In the face of this dearth of authority, Plaintiffs claim Article 18,

9   Section 6 of the Arizona State Constitution—which states "[t]he right of action to recover

10  damages for injuries shall never be abrogated"—authorizes them to seek damages to

11  recover for violations of state constitutional rights. The "anti-abrogation clause," however,

12  is not an independent source of substantive rights, but guards against only legislative

13  abrogation of "common law actions for negligence, intentional torts, strict liability,

14  defamation and other actions in tort which trace origins to the common law." *See Cronin*

15  *v. Sheldon*, 991 P.2d 231, 238 ¶ 35 (Ariz. 1999); *see also Patterson v. Connolly*, 77 P.2d

16  813, 814 (Ariz. 1938) ("[T]he common law of Arizona included the English common law

17  as amended by statute down to the time of the severing of the union between the colonies

18  and the mother country.")

19       Plaintiffs have made no showing that any right of action at common law allowed for

20  recovery of money damages when a government official retaliated against a person for

21  speech or expressive activity. The lack of evidence for a tort action against government

22  officials for violating a right in a yet-to-be-written constitutional provision should not be

23  very surprising on its own, but it is even less so in view of the fact that modern Arizona

24  law continues to be unfamiliar with any such claim. Indeed, speech restrictions and even

25  prosecutions for unwelcome utterances were well-known to the common law.[5] Thus, the

26  _____
    [5] *See, e.g.*, *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713–14 (1931) (explaining that

27  the common law did not restrain subsequent punishment of speech thought to be contrary
    to the public welfare); *Mckee v. Cosby*, 139 S. Ct. 675, 678 (2019) (Thomas, J., concurring

28  in the denial of certiorari) (explaining that, at common law, libel was criminal and intended
    to punish provocations to a breach of the peace); *Alexander v. United States*, 509 U.S. 544,
    569 (1993) (Kennedy, J., dissenting) (collecting cases showing that even the through the

1    Court concludes that Plaintiffs do not have a cognizable claim for damages under the
2    Arizona State Constitution and will dismiss that claim with prejudice.

3           Defendants' contention that Arizona law does not recognize a wrongful garnishment
4    cause of action absent pre-judgment attachment of assets, however, does not fare so well.
5    For support, Defendants cite *United States Fidelity & Guarantee Co. v. Davis*, 413 P.2d
6    590 (Ariz. Ct. App. 1966) which does not address the elements of wrongful garnishment
7    and thus does not require pre-judgment attachment of assets. "The garnishment procedure
8    is strictly a statutory one . . . ." *Andrew Brown Co. v. Painters Warehouse, Inc.*, 531 P.2d
9    527, 529 (Ariz. 1975). If information in the application for garnishment "is not correct,
10   then the resulting garnishment is wrongful." *Id.*; *see also* 38 C.J.S. *Garnishment* § 454
11   (June 2020 Update) ("[T]o state a claim for wrongful garnishment, a plaintiff must usually
12   allege that the garnished property is his property and also must allege abuse or misuse of
13   the garnishment statute.")

14          That is precisely the kind of claim that Plaintiffs make here: that the Individual
15   Defendants knew the superior court judgment could be satisfied against only Mark Stuart's
16   separate property, that they knew the relevant bank account contained only community
17   property, and that they proceeded to represent the account was subject to garnishment in
18   their application. *See* A.R.S. § 12-1572; (Doc. 1 at 15–17). In the end, Defendants' half-
19   hearted attempt to argue that Plaintiffs have no cognizable claim for wrongful garnishment
20   is countered by both statute and caselaw. Thus, the Court will deny Defendants' motion to
21   dismiss on this basis.

22   **C. Absolute Immunity**

23          Defendants argue further that "to the extent that the City Council[members] and
24   Mayor had any role in the garnishment . . . it would have been through their action as a

25   _____
     early twentieth century the Court had "tended to repeat the suggestion by Blackstone that
26   prior restraints were the sole concern of First Amendment protections"); *New York Times
     Co. v. United States*, 403 U.S. 713, 723–24 (1971) (Douglas, J., concurring) ("It is common
27   knowledge that the First Amendment adopted against the widespread use of the common
     law of seditious libel to punish the dissemination of material that is embarrassing to the
     powers-that-be."); Eugene Volokh, *Symbolic Expression and the Original Meaning of the
28   First Amendment*, 97 Geo. L.J. 1057, 1063–68 (2009) (outlining various forms of
     restrictions on symbolic expression at or before the founding era).

legislative body which would render their decisions absolutely immune from liability." (Doc. 19 at 7 (citing *Bogan v. Scott-Harris*, 523 U.S. 44 (1998)). They also argue that the City Attorneys who initiated the garnishment action enjoy absolute immunity because they were performing a quasi-prosecutorial function in a civil case. (*Id.* (first citing *Canell v. Or. Dep't of Justice*, 811 F. Supp. 546, 552 (D. Or. 1993); and then citing *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991)). Plaintiffs respond that—in either instance—the decision to initiate a garnishment action is not the kind of governmental function that enjoys absolute immunity. (Doc. 24 at 7–8).

Courts have long "acknowledged that for some 'special functions,' it is 'better to leave unredressed the wrongs done by dishonest [officials] than to subject those who try to do their duty to the constant dread of retaliation.'" *Burns v. Reed*, 500 U.S. 478, 484 (1991) (citations and quotations omitted). This protection applies in only "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business," *Butz v. Economou*, 438 U.S. 478, 507 (1978), because courts presume that qualified immunity suffices to protect government officials in the exercise of their duties, *Burns*, 500 U.S. at 486–87. The question whether absolute immunity shields an official's conduct, looks "at the nature of the act rather than simply at which institution acted." *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 579 (9th Cir. 1984). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns*, 500 U.S. at 486.

### i. Legislative Immunity

Legislators of all stations—from local to federal—have "absolute immunity from civil liability for their legislative activities." *Bogan*, 523 U.S. at 46. Because immunity attaches to only *legislative* acts, the question is "whether, stripped of all considerations of intent and motive, [Defendants'] actions were legislative." *Id.* at 55. Courts in this circuit apply a four-part test to determine if an act is legislative "(1) 'whether the act involves ad hoc decisionmaking, or the formulation of policy'; (2) 'whether the act applies to a few individuals, or to the public at large'; (3) 'whether the act is formally legislative in

1    character'; and (4) 'whether it bears all the hallmarks of traditional legislation.'"
2    *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003) (citation omitted).

3    Defendants have not shown that the decision of the Mayor and City
4    Councilmembers to order the initiation of a garnishment action against Plaintiffs is one that
5    is entitled to absolute legislative immunity. Indeed, Defendants have not made any
6    meaningful legal argument that the decision resulted from anything that looked like
7    legislation. Rather, taking the facts in the complaint as true, the decision to initiate a
8    garnishment proceeding was manifestly unrelated to policy formulation, applied only to
9    Plaintiffs, was not formally legislative in character, and did not bear any of the hallmarks
10   of traditional legislation. Therefore, the Court will not apply absolute immunity to the
11   Mayor and City Councilmembers at this time.

12            **ii.    Prosecutorial Immunity**

13   Certain functions of government attorneys may also enjoy absolute immunity. In
14   the criminal context, prosecutors are immune from suit for "activities . . . intimately
15   associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S.
16   409, 430 (1976). The Supreme Court later extended this immunity "beyond criminal
17   prosecutions to administrative enforcement proceedings." *Stapley v. Pestalozzi*, 733 F.3d
18   804, 810 (9th Cir. 2013) (citing, *Butz*, 438 U.S. at 511–14). While the Ninth Circuit Court
19   of Appeals has previously spoken broadly about the scope of government-attorney
20   immunity across litigation contexts, it has since clarified that immunity does not cover "all
21   litigation-related conduct;" instead, "only certain actions taken by prosecutors receive
22   absolute immunity, and that a functional comparison of the activities performed is critical."
23   *Id.* at 810–11 (discussing *Fry*, 939 F.2d at 838, and *Flood v. Harrington*, 532 F.2d 1248,
24   1252 (9th Cir. 1976)). Lastly, attorneys may "forfeit[]" such immunity when they "side-
25   step[] the judicial process." *Id.* at 811 (quoting *Lacey*, 693 F.3d at 914).

26   Although Defendants muster more in support of their argument that absolute
27   immunity applies to the actions of the City Attorneys than they did for the Mayor and City
28   Councilmembers, the outcome is the same—they have failed to demonstrate that absolute

immunity applies here. They cite *Fry* for the proposition that absolute immunity applies in all cases where the attorney is conducting a civil trial. (Doc. 19 at 7). But again, subsequent cases have made clear that the scope of immunity does not stretch so far. *Stapley*, 733 F.3d at 810–11. Defendants do not point to any prosecutorial tasks that are analogous to the seemingly far afield act of applying for a writ of garnishment in a civil proceeding.

To the contrary, even Defendants' own cases have found absolute immunity does not apply where the government seeks to collect a debt in a way available to the ordinary litigant. In *Stapley*, for example, the Ninth Circuit Court of Appeals reasoned that a county attorney was not entitled to absolute immunity for filing a civil RICO suit because the statute authorizing such lawsuits treated government and private attorneys alike. *Id.* at 811. Thus, "the government attorney was [not] taking action that only a legal representative of the government could take." *Id.* at 812. And in *Canell*, the court held that absolute immunity does not apply when the government acts "as a common creditor attempting to collect a debt," without anything "unique to distinguish that claim from those filed by businesses every day." *Canell*, 811 F. Supp. at 552. Under these authorities, government attorneys—like the City Attorneys here—are not absolutely immune from liability when they act, not "as the state qua state, but as an ordinary litigant." *Id.* Because collecting on an unpaid litigation sanction is not a uniquely governmental act, these cases undercut the City Attorneys' claim to absolute immunity.

Accordingly, the Court concludes that the City Attorneys are not entitled to absolute immunity at this stage.

## D. Qualified Immunity

Defendants next argue that the individual defendants are entitled to qualified immunity because Plaintiffs have not offered "legal authority clearly establishing that collection activity on a valid judgment in accordance with state law violates clearly established federal rights." (Doc. 19 at 5–7). Plaintiffs respond by citing cases that they claim show the rights they seek redress for have been clearly established in this circuit for "many years." (Doc. 24 at 5–7).

Under § 1983, state officials are liable for civil damages only insofar as they trench on "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine, known as qualified immunity, balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "It represents 'the norm' for public officials, and serves to insulate from suit 'all but the plainly incompetent or those who knowingly violate the law.'" *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (citations omitted). Thus, "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct," qualified immunity prevents the lawsuit from proceeding further. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818); *see also Conner v. Heiman*, 672 F.3d 1126, 1133 (9th Cir. 2012) (extending qualified immunity to state officials on § 1983 conspiracy claims for failure to show violation of "clearly established" rights).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1137 (9th Cir. 2018) (emphasis omitted) (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1090–91 (9th Cir. 2016)). In rare cases, a violation may be so obvious that every reasonable official would be on notice that the conduct in question was unlawful. *Sharp v. County of Orange*, 871 F.3d 901, 911 & n.7 (9th Cir. 2017) (collecting cases). Normally, however, an official is on notice only when existing precedent has "placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741; *see also Sharp*, 871 F.3d at 911 (explaining that the relevant precedent must be either controlling in the relevant jurisdiction or embraced by a consensus of cases outside the jurisdiction). Thus, to survive a motion to dismiss based on qualified immunity, a plaintiff "must point to prior case law that articulates a constitutional rule specific enough to alert

- 12 -

1   these [officials] in this case that their particular conduct was unlawful." *Hernandez*, 897

2   F.3d 1137 (emphasis omitted).

3       For support, Plaintiffs points to *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310,

4   1314 (9th Cir. 1989), and *Lacey*, 693 F.3d at 916–17, for the general proposition that "[t]he

5   right to be free from First Amendment retaliation has been established in this circuit for

6   many years." (Doc. 24 at 6). The Supreme Court has repeatedly admonished, however, that

7   courts are "not to define clearly established law at a high level of generality." *Ashcroft*, 563

8   U.S. at 742. Both cases that Plaintiffs cite are too factually dissimilar to put the Individual

9   Defendants on notice that the garnishment action at issue would violate Plaintiffs' civil

10  rights. *Sorrano's Gasco* concerned an agency's decision to suspend certain permits because

11  the plaintiff publicly criticized and sued the agency. 874 F.2d at 1315–16. And *Lacey*

12  involved a special prosecutor who investigated a reporter and had the reporter arrested for

13  newspaper articles criticizing public officials. 693 F.3d at 916–17. Neither case is

14  sufficiently similar to what Plaintiffs allege—that Defendants used a garnishment

15  proceeding to collect on a valid money judgment issued as a result of a court-imposed

16  sanction but overstepped and seized community assets—to put Defendants on notice.

17      Given that it is Plaintiffs' burden to produce cases showing a right is clearly

18  established, *Hernandez*, 897 F.3d at 1137, the Court is not convinced it needs to discuss

19  the matter any further. However, the Court notes that its own research has yielded no case

20  with a sufficiently similar fact pattern that it would place the impropriety of the

21  garnishment action beyond question. In fact, the only analogous authority the Court could

22  locate was a district court case, *Roy v. Barshaw*, No. C06-5296FDB, 2007 WL 3357705

23  (W.D. Wash. Nov. 8, 2007), that points to the contrary conclusion. There, an inmate alleged

24  that prison officials retaliated against him by, inter alia, causing multiple writs of

25  garnishment to be filed against him in retaliation for his legal successes against them in

26  other lawsuits. *Id.* at *1. Addressing the garnishment issue, the court concluded that no

27  federal law or standard clearly prevented state officials "from contacting a . . . creditor to

28  inform them of available monies" for garnishment. *Id.* at *7. Thus, *Roy* supports the

proposition that a state official does not violate any clearly established rights by taking actions to initiate a garnishment proceeding on a valid debt.

Accordingly, to the extent Plaintiffs seek money damages against Individual Defendants in their individual capacities,[6] those defendants are entitled to qualified immunity on Plaintiffs' § 1983 claims and conspiracy claims against them.[7] Thus, the § 1983 claims will be dismissed with prejudice against Individual Defendants.

**E. *Monell***

Defendants next assert Plaintiffs' complaint fails to state a claim for municipal liability under § 1983 because it "is devoid of any allegations to support the claim that there was [a] deprivation of a constitutional right through an official policy of the City." (Doc. 19 at 8–9). Plaintiffs respond that even their bare allegations can state a claim. (Doc. 24 at 10).

Under § 1983, municipalities may not be sued under a theory of respondeat superior for injuries inflicted by their employees or agents but can be sued directly when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance,

---

[6] "Qualified immunity is not available, however, to municipalities or individuals in their official capacities." *Eng v. Cooley*, 552 F.3d 1062, 1064 n.1 (9th Cir. 2009). Furthermore, because Plaintiff is suing the City, the claims against Individual Defendants in their official capacity are dismissed as redundant. *Contreras, ex rel. Contreras v. County of Glenn*, 725 F. Supp. 2d 1157, 1159–60 (E.D. Cal. 2010) ("When a plaintiff has sued both an officer in his/her official capacity and sued his/her employer, the individual capacity suit is dismissed as redundant."); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")

[7] Given the Court's resolution of this issue, the Court need not address Defendants' alternative argument that Plaintiffs have not alleged sufficient facts to bring a claim for abuse of process under § 1983. Nor does the Court believe it needs to address Defendants' argument that the § 1983 conspiracy claim must be dismissed because the City is incapable of conspiring with its agents. (Doc. 19 at 8). "Conspiracy is not itself a constitutional tort under § 1983" but is simply a tool used to "enlarge the pool of responsible defendants by demonstrating their causal connections to the violation." *Lacey*, 693 F.3d at 935; *see also Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) ("To be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights."). Since Plaintiffs allege that each of Defendants—who are either state actors or municipalities—is responsible for violating their constitutional rights it is not clear what advantage they hoped to gain from this tool. At any rate, the conclusion that qualified immunity shielded the decision to initiate the present garnishment proceeding from liability also vitiates the § 1983 conspiracy claim.

regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Generally, a plaintiff has three routes to prove municipal liability:

> (1) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate."

*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & Cnty. of San Francisco,* 308 F.3d 968, 984–85 (9th Cir. 2002)).

Plaintiffs' complaint relies on only general allegations about the existence of a policy to "use[] City resources against those like the Stuarts that exercise their federal constitutional rights vis-a-vis" the City. (Doc. 1 at 12). They also generally allege that Defendants are policymakers with supervisory authority that either created this policy or allowed it to develop through their failure to properly train City employees. (*Id.* at 11–12). And to defend their use of those general allegations, Plaintiffs claim that is all that is required of them at this stage of the litigation. (Doc. 24 at 10).

Unfortunately for Plaintiffs, however, that is no longer the case. The Ninth Circuit Court of Appeals has held that *Monell* claims must now satisfy the requirements of *Iqbal*. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 656 F.3d 1202, 1216 (9th Cir. 2011)). Following *A.E.* and *Starr*, district courts have accordingly required plaintiffs to "specify the content of the policies, customs, or practices the execution of which gave rise to [the] Constitutional injuries." *Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 899 (N.D. Cal. 2013); *see also Inman v. Anderson*, 294 F. Supp. 3d 907, 922 (N.D. Cal. 2018). Plaintiffs' allegations obviously do not rise to this level of factual specificity. The complaint contains no detail about the contents of the policies, customs, or practices, that resulted in their injuries. In truth, Plaintiffs do no more than parrot the elements for the various ways a party can try to

1   establish a claim under *Monell*. Thus, they do not state a claim to relief that is plausible on

2   its face.

3       Accordingly, the Court will dismiss Plaintiffs' *Monell* claim against the City. That

4   dismissal will be without prejudice, however, because Plaintiffs could possibly allege facts

5   about the contents of the policy subjecting them to injury.

6   **F.  Arizona Abuse of Process**

7       Defendants also argue that Plaintiffs have failed to state an abuse of process claim

8   under Arizona law because a writ of garnishment is "a legitimate, statutorily authorized

9   method of seeking to collect on an unpaid judgment," meaning Plaintiffs cannot claim that

10  it "could not logically be explained without an improper motive." (Doc. 19 at 10–11 (citing

11  *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 889 ¶ 19 (Ariz. Ct. App. 2004)). Plaintiffs respond

12  that they have adequately alleged a state-law abuse of process claim because, although a

13  garnishment proceeding is a valid, statutorily authorized legal tool, the Defendants "knew

14  that they were garnishing property to which they had no legal entitlement." (Doc. 24 at 14).

15      Abuse of process entails "(1) a willful act in the use of judicial process; (2) for an

16  ulterior purpose not proper in the regular conduct of the proceedings." *Nienstedt v. Wetzel*,

17  651 P.2d 876, 881 (Ariz. Ct. App. 1982). The gravamen of an abuse-of-process claim is

18  that the defendant used a litigation procedure—like garnishment—to achieve an end the

19  procedure was not designed for. *Crackel*, 92 P.3d at 887 ¶ 11; *see also Fappani v. Bratton*,

20  407 P.3d 78, 81–82 ¶ 10 (Ariz. Ct. App. 2017) (listing garnishment as a "process");

21  *Nienstedt*, 651 P.2d at 882 (stating that the use of process must be "so lacking in

22  justification as to lose its legitimate function as a reasonably justifiable litigation

23  procedure").

24      Whether the complaint sufficiently alleges that Defendants initiated the garnishment

25  action with an improper primary purpose is a close call. But the Court's assumption that

26  Defendants garnished property of the marital community that Defendants were not entitled

27  to resolves this close question. Defendants place a great deal of stress on the fact that they

28  lawfully procured the garnishment and, from this premise, Defendants ask the Court to

infer "a proper motive of seeking to collect monies due." (Doc. 19 at 10–11). However, "it is immaterial that the process was properly issued," Restatement (Second) of Torts § 682 cmt. a (Am. Law Inst. 1977), and the Court cannot draw an inference against Plaintiffs at this point in the proceedings. Rather, assuming Defendants knew they were not entitled to the money in the Bank of America account, the inference that the Court must draw at this stage is that Defendants did not simply intend to collect monies owed and that their primary desire was to seize funds of the marital community to send a message to Mark Stuart that his litigation activity would result in financial harm to both he and his wife.

This conclusion is supported by an illustration from the Restatement. Consider the following:

> A obtains a judgment against B for a debt owed by him. After the debt has to his knowledge been paid, A takes out execution on the judgment. A is subject to liability to B for abuse of process.

Restatement (Second) of Torts § 682 illus. 2. In this illustration, A is liable to B because he has executed on a judgment for funds he knows he does not have a right to. While the scenario described in the complaint might differ in its particulars, the complaint does allege that Defendants attempted to use process to claim funds they knew they had no right to. Under the Restatement approach, those facts suffice to state a claim for abuse of process.

Accordingly, the Court rejects Defendants' argument that Plaintiffs failed to adequately plead their abuse of process claim under Arizona law.

### G. IIED

Defendants have also argued that Plaintiffs do not plead any of IIED's elements adequately. (Doc. 19 at 11). Despite this broad statement, they focus on only the "extreme and outrageous" element of the tort. (*Id.*). Plaintiffs claim that the Defendants' seizure of marital property "despite knowing that they had no legal right to seize the property" is extreme and outrageous behavior. (Doc. 24 at 15).

Arizona follows the Restatement (Second) of Torts § 46 and allows recovery "where one intentionally causes another severe emotional distress . . . even in the absence of a

resulting physical harm." *Savage v. Boies*, 272 P.2d 349, 358 (Ariz. 1954). IIED occurs when: (1) the defendant's conduct was "extreme and outrageous," (2) the defendant intended to, or recklessly disregarded the near certainty that he would, cause emotional distress, and (3) severe emotional distress resulted. *Watts v. Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980). To be "extreme and outrageous," the conduct must fall "at the very extreme edge of the spectrum of possible conduct." *Id.* Indeed, it must be "utterly intolerable in a civilized community," Restatement (Second) of Torts § 46 cmt. d (Am. Law Inst. 1965), and threaten "to shatter the frame upon which one's emotional fabric is hung," *Pankratz v. Willis*, 744 P.2d 1182, 1189 (Ariz. Ct. App. 1987) (quoting *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1064 (Md. Ct. Spec. App. 1986)). "[T]o minimize wasted judicial resources on meritless claims for relief under this tort," whether a defendant's conduct is reasonably regarded as extreme and outrageous is a preliminary question for the court. *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 499 (Ariz. Ct. App. 1982). When "reasonable minds could differ" about whether the conduct complained of clears this high bar, the claim should be allowed to proceed. *Johnson v. McDonald*, 3 P.3d 1075, 1080 ¶ 23 (Ariz. Ct. App. 1999).

Assuming the truth of Plaintiffs' allegations, they have alleged that Defendants tried to collect a valid debt in an improper manner for an improper reason. While average members of the community might frown on such conduct, Arizona caselaw shows that they would not find the conduct extreme and outrageous. Where, as here, an IIED claim arises in the debtor-creditor context, "courts have uniformly insisted that the creditor's conduct be *clearly and obviously excessive* in order to sustain a cause of action; 'liability usually has rested on a *prolonged* course of hounding by a variety of *extreme* methods.'" *Midas Muffler Shop*, 650 P.2d at 499 (emphases added) (citation omitted). Courts have found IIED where, for example, "during a 16 month period, the creditor repeatedly wrote, phoned, and visited the debtor, threatening to seize the debtor's home and sell it if payment was not made," or where "even though plaintiffs had notified defendants of an error in billing, the defendant [sic] repeatedly made telephone calls and sent approximately 42

threatening letters over a period of more than one year, and . . . threatened to deliberately injure the plaintiff's credit reputation and job security." *Id.* at 500 (first citing *Watson v. Franklin Fin.*, 540 S.W.2d 186 (Mo. Ct. App. 1976), and then citing *Moorehead v. J.C. Penney Co., Inc.*, 555 S.W.2d 713 (Tenn. 1977)). Even if the superior court judgment did not permit Defendants to garnish funds from the Bank of America account, this isolated event was neither prolonged nor did it involve the acrimonious harassment described in these cases.

Arizona cases across other factual scenarios support this conclusion. When an employer hand-delivered a letter demanding an employee return to work while she was in the hospital suffering from severe work-related emotional and psychological problems, the conduct was not extreme and outrageous "even in light of [her] known susceptibility to emotional problems." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 561, 563 (Ariz. Ct. App. 1995). Neither did a nursing home engage in extreme and outrageous conduct where it failed to inform a wife that her husband had terminal pneumonia until he was transferred to a hospital two days later even though the delay was "unjustifiable." *Watts*, 619 P.2d at 1035. In contrast, defendants who assisted their daughter in absconding with her and her former spouse's child acted in an extreme and outrageous manner, *Pankratz*, 744 P.2d at 1184, 1189, as did an employer who ignored an employee's numerous reports of sexual harassment, "dragging the matter out for months and leaving [her] without redress," *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). As these cases show, even if the garnishment in the case at bar was improper and motivated by an improper reason, that conduct does not rise to the level of behavior that Arizona courts have found can give rise to an IIED claim.

In the end, Plaintiffs' IIED claim is in substance no different from their claim for abuse of process. But IIED is reserved for more flagrant conduct than simply using judicial process for an improper purpose. That factual scenario, without more, is not the stuff that IIED claims are made of.

Accordingly, the Court will dismiss Plaintiffs' IIED claim. That dismissal will be

without prejudice, however, because Plaintiffs could possibly allege additional facts that would support a conclusion of extreme and outrageous conduct.

**H. Defamation and False Light Invasion of Privacy**

Lastly, Defendants argue that Plaintiffs' claims for Defamation and False Light Invasion of Privacy are insufficiently pleaded because the complaint fails to identify any false or misleading statement about Mark Stuart. (Doc. 19 at 12). All that Plaintiffs have alleged is that the City Attorneys have "made statements about Mark Stuart that they knew were false" and "made statements about Mark Stuart that they knew were untrue and intended to misrepresent and disparage Mark Stuart's character, history and beliefs." (Doc. 1 at 22). Defendants also point out that any statements made in the garnishment filings would be immune from liability. (Doc. 19 at 12 n.5). Plaintiffs respond by asking for permission to amend their complaint to add facts about specific statements before or after the garnishment proceedings. (Doc. 25 at 15). Because Plaintiffs have conceded their failure to identify any specific statement or publication that was either false or misleading, the Court will dismiss these claims without prejudice.

**I.  Summary and Jurisdiction over Remaining Claims**

The Court will now summarize what has survived the motion to dismiss and what has not. The Court will begin with Plaintiffs' federal claims—Counts 1, 2, and 3—which each assert theories of liability under § 1983. These claims are dismissed. First, because the City is already named as a defendant, claims against the Individual Defendants in their official capacities are redundant. Second, Counts 1 and 2 are dismissed with prejudice because the Individual Defendants sued in their individual capacities are entitled to qualified immunity. Third, Count 3—Plaintiffs' *Monell* claim against the City—is dismissed without prejudice as insufficiently pleaded. Thus, the City and the Individual Defendants in their official capacities are dismissed from this case subject to Plaintiffs' leave to amend.

As for Plaintiffs' state-law claims, some of them survive the motion and some do not. First, Count 4 is dismissed with prejudice because Arizona law does not recognize a

tort claim for violating Article 2, Section 6 of the Arizona State Constitution. Second, Count 5 survives the motion to dismiss because pre-judgment attachment of assets is not a necessary predicate of a wrongful garnishment tort. Third, Count 6 survives the motion to dismiss because the abuse of process claim is sufficiently pleaded. Fourth, Count 7 is dismissed without prejudice for failure to plead extreme and outrageous conduct. Fifth, Count 8 is dismissed without prejudice based on the parties' apparent agreement that loss of enjoyment of life is a theory of damages not a cause of action. Because this is a theory of damages, the Court notes that Plaintiffs may re-raise it if appropriate at a later stage of these proceedings. Sixth, Count 9 survives the motion because it is not strictly a damages theory. Lastly, and similarly, Counts 10 and 11 are dismissed without prejudice based on Plaintiffs' apparent concession that the complaint does not identify any specific statement or publication that was false or misleading.

In sum, after ruling on the motion to dismiss, only three state-law claims (Counts 5, 6, and 9) remain. The absence of a federal claim has consequences for this Court's jurisdiction. The parties are not diverse, and so the only basis for exercising jurisdiction over state-law claims is 28 U.S.C. § 1367. This statute provides the Court with jurisdiction over state-law claims that are sufficiently related to the claims over which the Court has original jurisdiction. 28 U.S.C. § 1367(a). But when the Court has dismissed the claims over which it had original jurisdiction, the statute gives the Court discretion to decline to exercise supplemental jurisdiction over remaining state-law claims. 28 U.S.C. § 1367(c)(3). Under that scenario, the Court should generally decline to exercise supplemental jurisdiction. *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994); *see also Schneider v. TRW, Inc.*, 938 F.2d 986, 993–95 (9th Cir. 1991) (describing factors that may counsel otherwise). Accordingly, the Court will dismiss the remaining state-law claims for lack of jurisdiction—including those that survived this motion to dismiss—if Plaintiffs fail to timely file an amended complaint re-alleging their *Monell* claim such that it specifies the content of the policies, customs, or practices the execution of which gave rise to their injuries in compliance with the standards articulated

1    in *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012).[8]

2          Plaintiffs should note that any amended complaint will supersede a prior complaint.

3    *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, any cause of action that was

4    raised in the complaint and dismissed without prejudice will be waived if it is not re-alleged

5    in any amended complaint. *Lacey*, 693 F.3d at 928.

6    / / /

7    / / /

8    / / /

9    / / /

10   / / /

11   / / /

12   / / /

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   _____

27   [8] Defendants have also sought a stay pending the outcome in related proceedings "[t]o the extent any claims remain following this motion." (Doc. 19 at 5 n.3). Defendants do not make any substantive argument as to why a stay is warranted, and this action may not

28   proceed past the pleading stage depending on Plaintiffs' ability to properly allege a *Monell* claim. Accordingly, the request is denied.

III.    CONCLUSION

For these reasons,

IT IS ORDERED that Defendants' Motion to Dismiss (Doc. 19) is GRANTED IN PART AND DENIED IN PART. The complaint (Doc. 1) is DISMISSED for failure to state a claim.

IT IS FURTHER ORDERED that Counts 1, 2, and 4 are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Counts 3, 7, 8, 10, and 11 are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED GRANTING Plaintiffs' leave to amend. Within 14 days of the date of this order, Plaintiffs must file an amended complaint that re-alleges their *Monell* claim in compliance with the standards articulated in *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012), and may, in that same pleading, re-allege any claim dismissed without prejudice in a manner that cures the deficiencies identified in this order. If Plaintiffs fail to file an amended complaint within 14 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action without prejudice as to Counts 3, 5, 6, 7, 8, 9, 10, and 11, and with prejudice as to all other counts.

Dated this 3rd day of August, 2020.

James A. Teilborg
Senior United States District Judge