**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark E Stuart, et al., | No. CV-20-00755-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Scottsdale, et al., | |
| Defendants. | |

Pending before the Court are Defendants' Motion for Partial Summary Judgment (Doc. 97), Plaintiffs' Response (Doc. 103), and Defendants' Reply (Doc. 105). This Court now rules.

## I.    BACKGROUND

Plaintiffs filed the original Complaint on April 17, 2020 and the Second Amended Complaint on March 21, 2021 alleging four violations of 28 U.S.C. § 1983 and seven state law violations related to wrongful garnishment of their community property. (Doc. 93). Plaintiffs are a married couple, Mark and Virginia Stuart. (Doc. 93 at 4). Defendant City of Scottsdale holds a judgment against Mark Stuart in the amount of $30,115 for the cost of attorney's fees incurred in defending a previous lawsuit which Plaintiff Mark Stuart initiated. (Doc. 93 at 4). In the current litigation, Plaintiffs allege that the City of Scottsdale and several of its employees wrongfully garnished Plaintiffs' community property in attempting to collect the underlying judgment for attorney's fees. (Doc. 93 at 8). Plaintiffs claim that, because Mr. Stuart's wife was not a named party in the previous judgment,

community property of the married couple should not be subject to garnishment. (Doc. 93 at 8). Plaintiffs allege that in attempting to collect this judgment, Defendants violated several state laws and the U.S. Constitution. (Doc. 93).

On April 16, 2021 Defendants filed the instant Motion for Partial Summary Judgment. (Doc. 97). Defendants Bruce Washburn and Eric Anderson claim that Plaintiffs did not comply with the Arizona notice of claim statute, A.R.S. § 12-821.01(A), and therefore any state law claims against them should be dismissed. (Doc 97 at 9). Defendants W.J. Lane, Bruce Washburn, Eric Anderson, Suzanne Klapp, Virginia Korte, Linda Milhaven, Kathy Littlefield, Guy Phillips, and Solange Whitehead claim that, as employees of the City of Scottsdale, they are entitled to qualified immunity from any federal law claims. (Doc. 97 at 15). Plaintiffs argue that there is a genuine dispute of material fact about whether Defendants Washburn and Anderson received notice of the claim, and that the individual defendants are not entitled to qualified immunity. (Doc. 103 at 12, 15).

## II.   LEGAL STANDARD

A party may move for summary judgment on any claim or defense under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, a party asserting that a fact cannot be disputed must support this claim by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Thus, summary judgment is mandated, ". . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial burden of informing the district court of the basis of the summary judgment motion, and of demonstrating the absence of a genuine issue of material fact for trial. *See Celotex*, 477 U.S. at 323; *Katz v.*

1    *Children's Hosp. of Orange County*, 28 F.3d 1520, 1534 (9th Cir. 1994). On an issue for
2    which the nonmoving party has the burden of proof at trial, the moving party need only
3    point out "that there is an absence of evidence to support the nonmoving party's case."
4    *Celotex*, 477 U.S. at 325. Once this initial burden is satisfied, the nonmoving party is
5    required to "go beyond the pleadings and by her own affidavits, or by the depositions,
6    answers to interrogatories, and admissions on file, designate 'specific facts' showing that
7    there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Nilsson, Robbins,*
8    *Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1544 (9th Cir.
9    1988). Where the standard of proof at trial is preponderance of the evidence, the
10   nonmoving party's evidence must be such that a "fair-minded jury could return a verdict
11   for the [nonmoving party] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*,
12   477 U.S. 242, 252 (1986).

13   **III.   DISCUSSION**

14          Defendants raise two arguments in their Motion for Partial Summary Judgment.
15   First, Defendants argue that Plaintiffs did not comply with the Arizona notice of claim
16   statute, A.R.S. § 12-821.01(A), when providing notice to Defendants Washburn and
17   Anderson. (Doc. 97 at 9). Second, Defendants Lane, Washburn, Anderson, Klapp, Korte,
18   Milhaven, Littlefield, Phillips, and Whitehead claim to be entitled to qualified immunity
19   from any federal law claims. (Doc. 97 at 13). The Court will address these arguments in
20   turn.

21          **A.    Notice of the Claim**

22          Defendants argue that Plaintiffs did not comply with the Arizona notice of claim
23   statute because they only provided notice to the Clerk of the City of Scottsdale and not to
24   Defendants Washburn and Anderson individually. (Doc. 97 at 9–13). Plaintiffs argue that
25   there is a genuine dispute of fact as to whether Defendants received notice of the claim and
26   that service to the City Clerk was sufficient. (Doc. 103 at 12–15).

27          **1.    Legal Standard**

28          Before initiating an action for damages against a public entity, a plaintiff must

provide a notice of claim to the entity in compliance with A.R.S. § 12-821.01. *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 491 (Ariz. 2007). When bringing a claim against an individual, a plaintiff must provide notice to the individual or "persons authorized to accept service for the public entity or public employee as set forth in the Arizona Rules of Civil Procedure. . . ." A.R.S. § 12-821.01(A). Under Rule 4.1(d)(3) of the Arizona Rules of Civil Procedure, agents "authorized by appointment or by law to receive service of process" may accept notice for an individual. Ariz. R. Civ. P. 4.1(d)(3); *see Peck v. Hinchey*, No. CV-12-01371-PHX-JAT, 2014 WL 10987731 (D. Ariz. Mar. 14, 2014), *aff'd in part, rev'd in part and remanded*, 655 F. App'x 534 (9th Cir. 2016), *as amended on denial of reh'g* (July 12, 2016) (holding that an agent must be authorized by appointment or by law to receive service of process). If such an agent does not exist for an individual, then a copy of the notice must be delivered to the individual personally or left at their abode with someone of suitable age who resides there.  Ariz. R. Civ. P. 4.1(d)(2)–(3). Service on a city clerk does not constitute notice to city employees in their individual capacities. *See Simon v. Maricopa Med. Ctr.*, 234 P.3d 623, 629 (Ariz. Ct. App. 2010). "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. § 12–821.01(A)." *Falcon ex rel. Sandoval v. Maricopa County* 144 P.3d 1254, 1256 (Ariz. 2006) (citation omitted).

State officers and employees sued in their official capacity are immune from lawsuits seeking money damages. *Ford Motor Co. v. Dep't of the Treas.*, 323 U.S. 459, 464 (1945) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."). The purpose for naming a governmental employee as a party in his or her official capacity is to seek an injunction of an ongoing constitutional violation. *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974). "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d)(1).

2.      **Analysis**

In this case, Plaintiffs attempted to provide notice of the claim to Defendants Washburn and Anderson by notifying the Clerk of the City of Scottsdale. (Doc. 103 at 14). As the Clerk of the City of Scottsdale is not an agent "authorized by appointment or by law" to accept notice for Defendants in their individual capacities, this was insufficient for the purposes of A.R.S. § 12-821.01(A). *See Simon*, 234 P.3d at 629 (holding that providing notice to a city clerk did not constitute notice on individual police officers). As a result, Plaintiffs have not adequately complied with the notice of claim statute regarding Defendants Washburn or Anderson in their individual capacities. *See Falcon ex rel. Sandoval*, 144 P.3d at 1256 (holding that delivering notice to a single member of a county board of supervisors did not provide notice to the remaining members of the board because they were not authorized to accept service for the remaining members).

Plaintiffs also contend that they mailed notice of the claim to Defendants Washburn and Anderson's place of employment, and thus there exists a genuine dispute of material fact as to whether Defendants received notice. (Doc. 103 at 12). While mail is an authorized method of delivering notice of a claim to a government entity, filing notice by mailing it to Defendants' place of employment is not sufficient for filing with individuals under A.R.S. § 12-821.01(A). *See Lee v. State of Arizona*, 182 P.3d 1169, 1173 (Ariz. 2008) (allowing for mailing notice of a claim only upon a governmental entity*); see also Kenney v. City of Mesa*, No. 1 CA-CV 12-0377 A, 2012 WL 5499424, at *6 (Ariz. Ct. App. 2012) (noting that personal delivery is required in the case of "individuals, not governmental subdivisions," and that "notices of claim may be accomplished by regular mail delivery" only in the case of governmental subdivisions). The Arizona notice of claim statute states that notice must be filed with someone authorized to accept service under the Arizona Rules of Civil Procedure. A.R.S. § 12–821.01(A); *see Simon*, 234 P.3d at 629. Mailing notice to a governmental employee at their place of work could not reasonably comply with Rule 4(d) which outlines who is authorized to accept service for individuals. Ariz. R. Civ. P. 4(d); *see Simon*, 234 P.3d at 629 ("To perfect his claims against an individual

officer, [plaintiff] had to deliver a notice of claim to the officer personally, [to] an individual of suitable age and discretion residing with the officer, or the officer's appointed agent.").

Plaintiffs' assertion that they e-mailed notice directly to Defendants necessarily fails for the same reasons. Whether Defendants Washburn or Anderson received actual notice of the claim is irrelevant if Plaintiffs did not comply with the notice of claim statute. *See Falcon ex rel. Sandoval*, 144 P.3d at 1256 (holding that strict compliance with the notice statute is required). Thus, Plaintiffs' have failed to meet their burden at summary judgment in presenting evidence of a genuine dispute of material fact regarding compliance with the notice of claim statute. Fed. R. Civ. P. 56. Accordingly, all state law claims against Defendants Washburn and Anderson in their individual capacities are dismissed.

### B.    Qualified Immunity

Defendants argue that the individual Defendants are entitled to qualified immunity because Plaintiffs have not pointed to a "clearly established constitutional right allegedly violated by the Defendants." (Doc. 97 at 13). Plaintiffs argue that under Arizona state law both parties of a marriage must be named in a judgment against community property, and thus the garnishment of their community property violated the Fourth and Fourteenth Amendments. (Doc. 103 at 17–29).

### 1.    Legal Standard

Under 42 U.S.C. § 1983, state officials are liable for civil damages only insofar as they tread on "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine, known as qualified immunity, balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "It represents 'the norm' for public officials, and serves to insulate from suit 'all but the plainly incompetent or those who knowingly violate the law.'" *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (citations omitted). Thus, "unless a plaintiff pleads facts showing (1) that the official

violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct," qualified immunity prevents the lawsuit from proceeding further. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818); *see also Conner v. Heiman*, 672 F.3d 1126, 1133 (9th Cir. 2012) (extending qualified immunity to state officials on § 1983 conspiracy claims for failure to show violation of "clearly established" rights).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Hamby v. Hammond*, 821 F.3d 1085, 1090–91 (9th Cir. 2016). In rare cases, a violation may be so obvious that every reasonable official would be on notice that the conduct in question was unlawful. *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (collecting cases). Normally, however, an official is on notice only when existing precedent has "placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741; *see also Sharp*, 871 F.3d at 911 (explaining that the relevant precedent must be either controlling in the relevant jurisdiction or embraced by a consensus of cases outside the jurisdiction). Thus, to survive a motion to dismiss based on qualified immunity, a plaintiff "must point to prior case law that articulates a constitutional rule specific enough to alert these [officials] in this case that their particular conduct was unlawful." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1137 (9th Cir. 2018) (emphasis omitted).

Under Arizona law, a debt or obligation incurred by one spouse while acting for the benefit of the marital community serves as a community debt or obligation. *See Greer v. T.F. Thompson & Sons, Inc*., No. CV-10-799-PHX-SMM, 2013 WL 4512055 at *4 (D. Ariz. Aug. 26, 2013). This is true regardless of whether the other spouse approved the debt or the conduct giving rise to the obligation. A.R.S. §§ 25-214(B) ("The spouses have equal management, control and disposition rights over their community property and have equal power to bind the community."); § 25-214(C) ("Either spouse separately may acquire, manage, control or dispose of community property or bind the community. . ."); *Ellsworth v. Ellsworth*, 423 P.2d 367 (Ariz. Ct. App. 1967) ("If the husband acts with the object of

benefiting [sic] the community. . . the obligations so incurred by him are community in nature, whether or not the wife approved thereof.") (citation omitted). "A debt incurred during a marriage for the benefit of the marital community is presumed to be a community obligation unless clear and convincing evidence exists to the contrary." *Arab Monetary Fund v. Hashim*, 193 P.3d 802, 805 (Ariz. Ct. App. 2008) (citing *United Bank of Ariz. v. Allyn*, 805 P.2d 1012, 1019 (Ariz. Ct. App. 1990)).

The court in *Parenteau v. Prescott Unified Sch. Dist.* articulated the rare issue of collecting sanctions from the community property of an attorney when it said:

> If Lassen's argument that the Lassen community property is exempt from execution because Mrs. Lassen was not joined before Judgment was entered succeeded, every litigation-related monetary sanction imposed by a federal or state trial judge upon a married Arizona lawyer for frivolous or other wrongful litigation actions would be uncollectible against such lawyer's community property and would not deter lawyers from filing groundless or frivolous litigation. Lassen has failed to demonstrate by clear and convincing evidence that the Lassen community property is exempt from execution on the judgment for fees and costs entered in this case as a sanction.

No. CV-07-8072-PCT-NVW, 2009 WL 10673616, at *5 (D. Ariz. Dec. 9, 2009), *report and recommendation adopted*, No. CV 07-8072-PCT-NVW, 2010 WL 11515677 (D. Ariz. Jan. 12, 2010). Thus, although sanctions are not exactly the same as traditional debts, they are treated the same as traditional debts for the purposes of binding the community property of a married couple. *Id.*

## 2.    Analysis

Here, Plaintiffs assert that the garnishment against their community property was an unjust taking that violated due process. (Doc. 103 at 17–29). In attempting to show this was a violation of clearly established law, Plaintiffs point to cases which reiterate that a judgment against an individual defendant cannot be collected through their community property. (Doc. 103 at 23) ("Under well-established Arizona law, Scottsdale did not have a legal right to seize the plaintiffs' community property to enforce its judgment against Mark Stuart. *See Shaw*, 67 Ariz. 225; *Petzhold*, 77 Ariz. 409; *Eng*, 123 Ariz. 346; *Putzi*, 151 Ariz. 480; *Hudman*, 177 Ariz. 70."). Several of the cases cited by Plaintiffs to support

their argument rely on A.R.S. § 25–215(D) which states: "In an action on such a debt or obligation the spouses shall be sued jointly. . . ." However, this statute only applies to claims, naming spouses as defendants, brought to collect a debt or obligation, which is not the case here. § 25–215(D). The judgment at question arises from a sanction issued against Plaintiff Mark Stuart during litigation he brought for the benefit of his marital community in which he served as the plaintiff. (Doc. 97 at 2); *see Hofmann Co. v. Meisner*, 497 P.2d 83, 88 (Ariz. Ct. App. 1972) ("For an act to be done with the intent of benefitting the marital community, it is not necessary that the husband's primary intent be for the benefit of the community. All that is required is that some benefit was intended for the community.").

The cases on which Plaintiffs rely are distinguishable from the instant case. When Plaintiff Mark Stuart filed the original action against the City of Scottsdale, resulting in the sanctions against him, he bound his marital community with respect to the fee-shifting statute A.R.S § 12-341.01. *See Greer*, 2013 WL 4512055 at *4. This is reflected in A.R.S. § 25–215(C) and in *Ellsworth* which both state that either spouse may bind the community to a financial obligation. *See Ellsworth*, 423 P.2d at 367.

Plaintiff Mark Stuart does not provide any evidence that his original action against the City of Scottsdale was for his sole benefit and so it will be presumed to have been brought for the benefit of the community. *See Arab Monetary Fund*, 193 P.3d at 805 (noting that Arizona caselaw requires clear and convincing proof to demonstrate that a debt is the separate obligation of only one spouse). The cases Plaintiffs provide are also lacking as they involve defendants that did not implicate their community property by themselves bringing a legal claim. (Doc. 103 at 23). Because these cases are distinguishable from Plaintiffs' situation, they do not clearly establish that Defendants' actions constituted an illegal taking. *See Ashcroft*, 563 U.S. at 741 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). The distinction between voluntarily and involuntarily binding community property to a cause of action is too great for this Court to overlook.

Plaintiffs also argue that because Virginia Stuart was not joined in the original

litigation or the subsequent judgment against Mark Stuart, she was not afforded a meaningful opportunity to be heard before her community property was garnished. (Doc. 103 at 37–40). However, Plaintiff Virginia Stuart had every right to join in the original action against the City of Scottsdale from the outset of the underlying litigation, either cooperatively with Mark Stuart or by moving to intervene. Ariz. R. Civ. P. 20; Ariz. R. Civ. P. 24(a); *see Gagan v. Sharar*, 376 F.3d 987, 992 (9th Cir. 2004). Virginia Stuart does not allege that she did not have full and fair notice that the underlying lawsuit was pending on behalf of the community. (Doc. 103). As Mark Stuart did not possess any sole and separate property to pay the filing fees and initiate the original lawsuit, community property must have been used to fund that litigation. (Doc. 93 at 4). If Virginia Stuart contributed to the original lawsuit via community property, then it is not clear how she was denied the right to be heard, or that Defendants should have been aware that they were depriving her of this right at the time of garnishment. *See Gagan*, 376 F.3d at 992–993 (holding that appellant was not denied opportunity to be heard after procedurally defaulting on her various options for appeal on the issue).

The cases cited by Plaintiffs to support this final argument are, again, distinguishable from the instant action because they are based on judgments against defendants who did not put their community property at issue by bringing their own claim. (Doc. 103 at 17–29). Plaintiffs' argument that Virginia Stuart was not heard on the original claim is unpersuasive as both spouses were implicated by initiating that suit. *See Greer*, 2013 WL 4512055 at *4. Thus, this Court finds that Plaintiffs have failed to demonstrate a violation of clearly established law which Defendants should have been aware of at the time of garnishment.

The Court notes that the superior court in the underlying state action "issued a Minute Entry concluding that the City's Judgment could not reach community funds." (Doc. 97 at 4). As the superior court's determination does not constitute controlling precedent in Arizona, it does not place the statutory question beyond debate. *See Ashcroft*, 563 U.S. at 741; *see also Sharp*, 871 F.3d at 911. Further, the superior court's minute entry

1   was issued after Defendants served its writ of garnishment on Plaintiffs' bank. (*See* Doc.

2   97 at 3–4). Thus, it could not have put Defendants on notice that they were violating a

3   statutory or constitutional right when serving the writ.

4          Accordingly, Defendants Lane, Washburn, Anderson, Klapp, Korte, Milhaven,

5   Littlefield, Phillips, and Whitehead are entitled to qualified immunity on all federal claims

6   against them in their individual capacities.[1]

7   **IV.**    **CONCLUSION**

8          **IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc.

9   97) is **GRANTED IN PART AND DENIED IN PART**:

10         Defendants Bruce Washburn and Eric Anderson, in their individual capacities, are

11   dismissed with prejudice on counts five, six, seven, eight, nine, ten, and eleven pursuant to

12   A.R.S. § 12-821.01(A);

13         Defendants W.J. Lane, Bruce Washburn, Eric Anderson, Suzanne Klapp, Virginia

14   Korte, Linda Milhaven, Kathy Littlefield, Guy Phillips, and Solange Whitehead are entitled

15   to qualified immunity in their individual capacities on counts one, two, three, and four,

16   and, accordingly, they are granted summary judgment on these claims on this basis.

17         Because other claims remain, the Clerk of the Court shall not enter judgment at this

18   time.

19         Dated this 19th day of August, 2021.

James A. Teilborg
Senior United States District Judge

---

[1] "Qualified immunity is not available, however, to municipalities or individuals in their official capacities." *Eng v. Cooley*, 552 F.3d 1062, 1064 n.1 (9th Cir. 2009).