**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark E Stuart and Virginia G Stuart,<br><br>    Plaintiffs,<br><br>v.<br><br>City of Scottsdale, et al.,<br><br>    Defendants. | No. CV-20-00755-PHX-JAT<br><br>**ORDER** |

Pending before the Court are the parties' cross-motions for summary judgment (Docs. 108, 132). Also before the Court is Defendants' Motion to Correct (Doc. 124) this Court's previous summary judgment order ("Order") (Doc. 119). The Court now rules.

**I.   BACKGROUND**

Plaintiffs Mark and Virginia Stuart brought this action against City of Scottsdale and city employees. Plaintiffs allege that the City of Scottsdale and several of its employees wrongfully garnished Plaintiffs' community property in attempting to collect an outstanding judgment that the City held against Mark Stuart.

On August 19, 2021, this Court granted qualified immunity to all individual defendants for federal claims and dismissed state law claims against Defendants Washburn and Anderson. (Doc. 119). Defendants now move for summary judgment on the remaining counts of Plaintiffs' complaint. (Doc. 132). Plaintiffs move for partial summary judgment on municipal liability for constitutional violations. (Doc. 108). For the following reasons, the Court will grant Defendants' motion for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The movant must first establish that there is no genuine dispute of material fact and that, based on the undisputed material facts, the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate the existence of any dispute of material fact. *Id.* at 323–24. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963)). There is a genuine issue of material fact if the disputed issue of fact "could reasonably be resolved in favor of either party." *Ellison*, 357 F.3d at 1075. Material facts are those "facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "construe all facts in the light most favorable to the non-moving party." *Ellison*, 357 F.3d at 1075–76 (citation omitted). However, the nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact that would defeat the motion for summary judgment. *Anderson*, 477 U.S. at 247–48.

## III. DISCUSSION

The Court will first address Defendants' Motion to Amend (Doc. 124). Next, the Court will address Plaintiffs' Partial Motion for Summary Judgment (Doc. 108). Then, the Court will address Defendants' Motion for Summary Judgment (Doc. 132). Finally, the Court will address Plaintiffs' Motion that this Court Not Impose Disclosure Sanctions

(Doc. 149). The Court will grant both of Defendants' motions and deny Plaintiffs' motions.

**A. Defendants' Motion to Amend (Doc. 124)**

On August 19, 2021, this Court issued an Order granting qualified immunity to individual defendants on counts one, two, three, and four. (Doc. 119). Defendants have filed a Motion to Amend the Order under Rule 60, arguing that the Court mistakenly excluded Defendant Jim Thompson from the list of individual defendants who were entitled to qualified immunity. (Doc. 124 at 1). Plaintiffs oppose the motion, (Doc. 129 at 1-2), arguing that the Court "erroneously granted qualified immunity" and should deny the motion to "conserve judicial resources" because they also filed a motion for reconsideration (which has been denied, *see* (Doc. 141)).

While Plaintiffs argue that the Court's grant of qualified immunity was incorrect, they do not address Defendants' claim that the Court mistakenly excluded Jim Thompson from that Order. On review of its Order, the Court agrees with Defendants that the Court inadvertently omitted defendant Jim Thompson from the list of individual defendants who were granted qualified immunity on counts one through four. The Court granted qualified immunity to every city employee in their official capacity and accidentally omitted defendant Jim Thompson. Given the Court committed the error, the question now is what the proper remedy is to rectify the error.

Defendants argue that the Court has the power to amend under Rule 60(a) or Rule 54(b). (Doc. 124 at 1). Rule 60(a) allows the Court to correct a "clerical mistake or a mistake arising from oversight or omission." Fed. R. Civ. P. 60(a). But Rule 60(a) does not contemplate the omission of a named defendant from an order. "While the district court may correct clerical errors to reflect what was intended at the time of ruling, 'errors that affect substantial rights of the parties . . . are beyond the scope of rule 60(a).'" *Weeks v. Jones*, 100 F.3d 124, 128 (11th Cir. 1996). Adding Jim Thompson's name to the Order would affect substantial rights—making the application of rule 60(a) inappropriate.

The Court, however, does have the power to amend its Order under Rule 54(b). Rule 54(b) permits the Court to revise "any order or other decision . . . at any time before the

entry of a judgment." Fed. R. Civ. P. 54(b). The Court's power to trigger summary judgment on its own initiative is tempered by the need to ensure that parties are given adequate notice. *Maitland v. Mitchell* (*In re Harris Pine Mills*), 44 F.3d 1431 (9th Cir. 1995).

Here, Plaintiffs had adequate notice to the issue. Defendants moved for summary judgment back on April 16, 2021. (Doc. 97). Plaintiffs filed a response to the motion on May 19, 2021. (Doc. 103). Defendants' Motion to Amend (Doc. 124) provided additional notice to Plaintiffs on the relief they sought. Therefore, the parties had adequate notice about the claim, making the grant of summary judgment under Rule 54(b) procedurally proper. Accordingly, the Court finds that Jim Thompson is entitled to qualified immunity on all federal claims against him in his individual capacity.

**B.  Plaintiffs' Partial Motion for Summary Judgment (Doc. 108)**

Plaintiffs assert that they are entitled to summary judgment on the "legal issue of the liability" of City of Scottsdale "for violations of their Fourth and Fourteenth Amendment rights." (Doc. 108). In their reply brief, Plaintiffs clarify that they are not seeking to prove that Scottsdale committed a constitutional violation, but rather they are proving "that the city of Scottsdale can be held liable, after plaintiffs prove the constitutional violations." (Doc. 125 at 3).

In response, Defendants argue that Plaintiffs' motion fails because Plaintiffs have not proved a constitutional violation. (Doc. 122 at 1). Defendants also contend that Plaintiffs have not offered evidence "that the City itself took any action regarding Mark Stuart whatsoever." (*Id.* at 4). Finally, Defendants argue that the City Council and final policymakers only had minimal involvement in the case. (*Id.* at 3).

To prevail on a constitutional claim against a municipality, a plaintiff must first prove that his constitutional rights were violated pursuant to a policy, practice, or custom of the municipality. *See Cortez v. Cty. of L.A.*, 294 F.3d 1186, 1188 (9th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). Plaintiffs argue that the City of Scottsdale "took the direct actions that caused plaintiffs constitutional injuries," and that

this establishes municipal liability. (Doc. 108 at 6).

For reasons discussed more fully below, the Court finds Plaintiffs have failed to show Defendants caused a constitutional deprivation. Thus, Plaintiffs' motion for summary judgment on this issue is denied.

**C. Defendants' Motion for Summary Judgment on Remaining Claims (Doc. 132)**

Defendants seeks summary judgment on Plaintiffs' remaining claims: (1) *Monell* claim; (2) violation of Article II, Section 6 of the Arizona constitution; (3) wrongful garnishment; (4) abuse of process; (5) intentional infliction of emotional distress; (6) loss of consortium; (7) defamation per se; and (8) false light invasion of privacy. Defendants also seek the dismissal of named spouses from the case.

In their response, Plaintiffs do not respond to Defendants' motion to dismiss the named spouses from the case. Plaintiffs also agree to voluntarily dismiss the claims concerning the Arizona constitution and false light invasion of privacy. (Doc. 139 at 23, 31). Accordingly, the Court will grant summary judgment on the claims for Article II, Section 6 of the Arizona constitution, false light invasion of privacy, and dismiss the spouses of individual defendants. After review, the Court will also grant summary judgment on the rest of the claims.

1. Federal *Monell* Claim

Defendants move for summary judgment on Plaintiffs' *Monell* claim, arguing that Plaintiffs have failed to bring evidence establishing Scottsdale played any role in the garnishment of Plaintiffs' property. (Doc. 132 at 7–8). "[A] local government may not be sued under §1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. The elements under the *Monell* test for a § 1983 claim against an entity are: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

Defendants argue that Plaintiffs' *Monell* claim is based upon a theory of respondeat superior, and Plaintiffs have not shown that final policymakers ratified the actions of the city employee. (Doc. 132 at 7). Defendants further argue that "Plaintiffs have failed to prove a constitutional violation." (*Id.* at 6).

In their response, Plaintiffs assert that the evidence shows "pervasive unconstitutional practices" of Scottsdale and its employees. (Doc. 139 at 11). Specifically, Plaintiffs contend that Scottsdale took direct actions which "caused the injuries to plaintiffs Fourth and Fourteenth Amendment rights." (*Id.* at 12). Plaintiffs further claim that Washburn is a final policymaker for Scottsdale and that establishes *Monell* liability. (*Id.* at 13).

Defendants are entitled to summary judgment on the *Monell* claim. To begin, Plaintiffs have failed to show that Defendants caused a constitutional deprivation. The alleged constitutional violations arise from Scottsdale's attempted garnishment of Plaintiffs' bank account and failure to provide notice to Virginia Stuart of its intent to seize her property.

In *Lattin v. Shamrock*, a defendant received an award of costs and attorney fees from an unsuccessful plaintiff. *Lattin v. Shamrock Materials, LLC*, No. CV-21-0031-PR, 2022 Ariz. LEXIS 46 (Feb. 3, 2022). Defendant sought to garnish a bank account that the plaintiff claimed was communal property with his nonparty spouse. *Id.* The Arizona Supreme Court found that a writ of garnishment did not require joinder, as "seeking an award of attorney fees for the successful defense of a complaint filed by a married plaintiff is not an 'action on [a community] debt or obligation' under § 25-215(D)" and neither is "a request for attorney fees and costs." *Id.* at *6.

The Arizona Supreme Court also found that due process did not require the joinder of the nonparty spouse. *Id.* at *7. And though the nonparty spouse "must be given the opportunity to be heard at a meaningful time and in a meaningful manner," *Id.* at *8 (internal quotation marks omitted), the time to do that is when the garnishment occurred.

Finally, the Arizona Supreme Court also found that it was up to the nonparty spouse to intervene and argue that the debt is the party's spouse alone:

> [N]either § 25-215(D) nor due process requires a defendant seeking an award of attorney fees and costs from a married plaintiff to join the plaintiff's spouse in the lawsuit to entitle it to later execute a judgment against community assets. If the court enters a judgment for attorney fees and costs in favor of the defendant, the plaintiff's spouse may intervene in any subsequent attempt to execute the judgment against community assets to argue the judgment is the plaintiff's sole and separate obligation, and community assets cannot be used to satisfy the judgment.

*Id.* at *8–9.

Here, the facts are the same as in *Lattin*. Defendants are seeking to satisfy a judgment of attorney fees. In so doing, they initiated a garnishment against community assets and did not join Virginia Stuart. Though Virginia Stuart can argue that the debt was a separate obligation and that community assets cannot be used to satisfy it, Defendants did not violate Ariz. Rev. Stat. § 25-215(D) or due process in issuing the writ of garnishment without prior notice. *Id.*

While Plaintiffs argue that *Lattin* "does not apply to public interest litigation," (Doc. 148 at 2), nothing in *Lattin* suggests that is true. In the Commissioner's ruling, he applied Ariz. Rev. Stat. § 25-215(D), finding that "the community is not liable for the debt at this time" because "both spouses must be sued jointly for the community to be liable for a debt or obligation." (Doc. 139-1 at 3). But *Lattin* found that seeking attorney's fees did not trigger the action requirement of Ariz. Rev. Stat. § 25-215(D) which goes to the heart of the Commissioner's decision. Thus, Plaintiffs are mistaken to suggest that *Lattin* does not apply to public interest litigation. Therefore, the Court finds that Plaintiffs have failed to show that Defendants committed a constitutional violation in the garnishment of their joint bank account.[1]

Even if Plaintiffs showed a constitutional violation, they have failed to produce any evidence that Scottsdale had a custom, pattern, practice, or policy of violating constitutional rights. Plaintiffs argue that Scottsdale has a history of unconstitutional

---

[1] As noted in *Lattin*, Virginia Stuart will have the opportunity to intervene in the proceedings to contest the judgment's character as a community obligation.

practices, citing to his past interactions with Scottsdale as well as lawsuits filed by past Scottsdale employees. (Doc. 93-1 at 17; Doc. 139-2 at 6; Doc. 139-8 at 1).

But this evidence consists solely of allegations. None of the provided evidence has a final judgment showing that constitutional violations indeed happened. Moreover, with respect to the provided evidence, the allegations—free speech and wrongful termination—are distinct from an unreasonable seizure or due process claim. It is unclear how these allegations support that Scottsdale has a practice of violating individual's Fourth and Fourteenth Amendment rights.

Because Plaintiffs have failed to show that Scottsdale had a custom, pattern, practice, or policy of violating constitutional rights, Plaintiffs must prove that the conduct alleged in the complaint was made or approved by a final policymaker. Plaintiffs argue that Mr. Washburn served as the final policymaker for Scottsdale. They argue that he "approved and directly participated in the actions against the Stuarts; his name appeared on every motion filed by Scottsdale." (Doc. 139 at 13).

"Whether an official has final policymaking authority is a question for the court to decide based on state law." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). In deciding the question, courts analyze whether there are policies that constrain the official's discretionary decision and whether the official's decision is "subject to review by the municipality's authorized policymakers." *Id.* at 1236–37. "The authority to make municipal policy is necessarily the authority to make final policy." *St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1988).

Here, Mr. Washburn's policymaking authority was subject to the City and the City Council. All City Attorney's actions are reviewable by the City Council. And as the City Attorney, Mr. Washburn had to "report to the council, when required, the condition of any suit or action to which the city is a party." S.R.C. § 2-116. *See Segal v. L.A. Cty.*, 852 F.2d 1290 (9th Cir. 1988) ("While a single decision by a municipal policymaker may sometimes satisfy *Monell*'s municipal policy requirement, the acting official must be directly

responsible for establishing final government policy on the activity involved and not just have discretion in carrying out his duties.").

Plaintiffs have failed to show a constitutional violation committed by Defendants. Moreover, Plaintiffs have failed to show that Scottsdale has a pattern or practice of violating constitutional rights. Defendants' Motion for Summary Judgment is granted with respect to the *Monell* claims.

## 2. Count Six: Wrongful Garnishment

Defendants also seek summary judgment on Plaintiffs' wrongful garnishment claim. To state a claim for wrongful garnishment, "a plaintiff must usually allege that the garnished property is his property and also must allege abuse or misuse of the garnishment statute." If information in the application for garnishment "is not correct, then the resulting garnishment is wrongful." *Andrew Brown Co. v. Painters Warehouse*, 111 Ariz. 404, 406 (1975).

Defendants contend that Plaintiffs have not produced any evidence to demonstrate that the garnishment statute was misused. (Doc. 132 at 9). Defendants further claim that the evidence shows that the garnishment was proper. (*Id.*). Plaintiffs argue that Scottsdale violated the garnishment statute by garnishing money they were not legally allowed to garnish. Plaintiffs also claim that Scottsdale's affidavits contained false and incorrect information. (Doc. 139 at 24–25).

Plaintiffs claim that Arizona law did not allow Scottsdale to garnish their property. (Doc. 139 at 24). To support this claim, Plaintiffs rely on the Commissioner ruling that found "that Scottsdale's judgment could not be enforced against plaintiffs [sic] community property." (*Id.*).

But the Commissioner did not conclude that the garnishment was wrongful. The court said that the judgment could not be enforced against the community property without joining Mrs. Stuart. (Doc. 139-1 at 3). And the Commissioner speculated that the "debt at issue may well be community debt." (*Id.*). Yet the court also said that Mr. Stuart was obstructing discovery and that "Scottsdale should have the opportunity to cross-examine

Mr. Stuart regarding his declarations upon which he rests his defense to the Writs of Garnishment." (Doc. 136-1 at 4).

Additionally, Plaintiffs have not provided any evidence of abuse or misuse of the garnishment statute. They state that "Scottsdale has no evidence to support the statements in its affidavit, and admitted this fact" and cite to the interrogatory as evidence. (Doc. 139 at 25). But the interrogatory of Defendant Eric Anderson does not support this claim. (Doc. 101-7 at 13) ("Defendant Anderson had come to believe that Mark Stuart maintained at least one bank account at Bank of America and given that Stuart had bragged of receiving $75,000 or more through his 'financial bounty hunter' status and further bragged of being a financial genius suggesting that he was a multi-millionaire, it was reasonable to believe that there may be such monies held."). Likewise, Plaintiffs' claim that they "have offered evidence showing that Scottsdale's affidavit is false" is also unsupported by their cited evidence. (Doc. 139 at 25). Plaintiffs' claim that "[n]o demand for payment of the judgment" does not show how the affidavit is false. (Doc. 139 at 4). Additionally, in the interrogatory Plaintiffs cite to, Defendant Anderson explains that a writ of garnishment was filed because of a perceived "pattern of delay and obfuscation" by Plaintiff Mark Stuart. (Doc. 101-7 at 10). Plaintiffs' other evidence similarly does not support the claim that Scottsdale's affidavits contained false and incorrect information.

Finally, as described above, the Arizona Supreme Court's decision in *Lattin* indicates that Defendants properly followed the garnishment procedures. *Lattin v. Shamrock Materials, LLC*, No. CV-21-0031-PR, 2022 Ariz. LEXIS 46 (Feb. 3, 2022). Because of this, Plaintiffs' wrongful garnishment claim fails. As a result, summary judgment is warranted on the wrongful garnishment claim.

### 3. Count Seven: Abuse of Process

To succeed on their Arizona abuse of process claim, Plaintiffs must present evidence that Defendants committed "a willful act in the use of judicial process . . . for an ulterior purpose not proper in the regular conduct of the proceedings." *Fappani v. Bratton*, 407 P.3d 78, 81 (Ariz. Ct. App. 2017) (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz.

Ct. App. 1982)). "[T]here is no action for abuse of process when the defendant uses the process for its authorized or intended purpose, even though with bad intentions, or . . . an incidental motive of spite." *Id.* (internal quotation marks and citation omitted). Moreover, "an ulterior purpose alone cannot constitute abuse of process." *Bird v. Rothman*, 627 P.2d 1097, 1100 (Ariz. Ct. App. 1981).

Defendants contend that they initiated garnishment proceedings on a valid judgment and "simply intended to collect monies owed." (Doc. 132 at 10). They further claim that Plaintiffs have produced no evidence to the contrary. (*Id.*). Plaintiffs assert that Scottsdale took three abusive willful actions in the use of judicial process during legal proceedings. (Doc. 139 at 26). They allege that Defendants abused the process in the following ways: (1) garnishing Plaintiffs' community property; (2) pursuing a secured claim against the property; (3) refusing to release Plaintiffs' community property following the state court order. (Doc. 139 at 25-28).

Plaintiffs claim that a "jury could conclude that Scottsdale was retaliating on Mark Stuart and seeking to punish him and inflict emotional and financial harm on the Stuarts, because he rejected their settlement offer in December 2018, or because of the public interest litigation and ongoing federal litigation." (Doc. 139 at 27). Plaintiffs also rely on this Court's prior order which denied Defendants' Motion to Dismiss:

> [T]he Court cannot draw an inference against Plaintiffs at this point in the proceedings. Rather, assuming Defendants knew they were not entitled to the money in the Bank of America account, the inference that the Court must draw at this stage is that Defendants did not simply intend to collect monies owed and that their primary desire was to seize funds of the marital community to send a message to Mark Stuart that his litigation activity would result in financial harm to both he and his wife.

(Doc. 26 at 17). But since surviving the motion to dismiss, Plaintiffs have not provided any evidence that Defendants intended to collect monies owed outside of a lawful purpose. Moreover, Plaintiffs' first argument rehashes their wrongful garnishment argument, claiming that "Scottsdale had no legal entitlement to satisfy its judgment against Mark Stuart from plaintiffs community property." (Doc. 139 at 26). This argument fails for the same reasons as stated above—none of the purported evidence shows that Scottsdale used

the process for anything but its "authorized or intended purpose." *Fappani*, 407 P.3d at 81.

Similarly, Plaintiffs' abuse of process concerning the secured claim fails. Though Plaintiffs argue that "Scottsdale admitted that it was seeking to increase Mark Stuart's bankruptcy costs, by filing the secured claim." (Doc. 139 at 27). But again, their evidence does not support this claim. Their citation to Scottsdale's brief in bankruptcy court does not indicate that Scottsdale was "seeking to increase Mark Stuart's bankruptcy costs." (Doc. 139-15 at 4). Nor have Plaintiffs provided evidence that Scottsdale used the secure claim for an improper purpose.

Finally, Plaintiffs have not produced any evidence that Scottsdale "had no factual basis to believe that Mark Stuart had any sole and separate property." (Doc. 139 at 28). Nor have they provided any evidence by which a "jury could conclude that Scottsdale's refusal to release plaintiffs [sic] property was intended to cause plaintiffs [sic] continued emotional distress." (*Id.*). Accordingly, Defendants' Motion for Summary Judgment is granted with respect to this claim.

### 4. Count Eight: Intentional Infliction of Emotional Distress

Defendants next seeks summary judgment on Plaintiffs' IIED claim. An IIED claim under Arizona law requires proof that: (1) conduct capable of being characterized as "extreme and outrageous," (2) intent to cause emotional distress or reckless disregard therefore, and (3) the conduct must have caused severe emotional distress. *McKee v. State*, 388 P.3d 14, 20 (Ariz. Ct. App. 2016) (citations omitted). A plaintiff must show "that the defendant's acts were 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Tempesta v. Motorola, Inc.*, 92 F. Supp. 2d 973, 987 (D. Ariz. 1999) (*quoting Mintz v. Bell Atl. Sys. Leasing Int'l*, 183 Ariz. 550 (Ariz. Ct. App. 1995).

Defendants argue that there is no evidence of "extreme and outrageous" conduct. (Doc. 132 at 11). They cite to this Court's previous Order, (Doc. 26), which dismissed this claim in a prior version of the complaint, because the alleged actions were "neither prolonged nor did it involve the acrimonious harassment." (*Id.* at 19).

Plaintiffs argue that a jury could decide that Scottsdale's continued seizure was outrageous because Defendants knew that Mark Stuart was particularly susceptible to emotional distress. (Doc. 139 at 28-29). Plaintiffs further contend that because city officials knowingly violated federal and state law, their actions amount to extreme and outrageous conduct. (*Id.* at 29).

The conduct Plaintiffs complain of does not rise to the level of extreme and outrageous. Plaintiffs argue that Defendants knew that their continued actions were exacerbating Mark Stuart's psychological condition. (Doc. 139 at 29). Plaintiffs' main evidence is a sworn declaration by Mark Stuart, saying that he wanted to testify under oath about his emotional hardships which Defendants objected to. (Doc. 139-2 at 3).

But Plaintiffs' mental anguish during this period does not mean the garnishment was extreme and outrageous. Nor does it mean that Defendants were acting to cause emotional distress. Plaintiffs have not provided any evidence that Defendants were acting in retaliation against them and with the intention of causing, or at least with reckless disregard of the risk of, emotional injury. Plaintiffs argue Defendants intended to cause emotional distress by refusing to stop its seizure of Plaintiffs' property and intended to "continue it for many years." (Doc. 139 at 30). Yet Plaintiffs have not provided any support that Defendants intended on seizing their property "for many years."

The cases cited by Plaintiffs also do not support their conclusion that Defendants acted with the intention of bullying Plaintiffs. In *Donahoe v. Arpaio*, the court found that plaintiffs had made out an IIED claim where the defendants retaliated against plaintiffs by criminally prosecuting and arresting them without probable cause. The court concluded that such unlawful conduct would make "'an average member of the community . . . exclaim, Outrageous!'" 869 F. Supp. 2d 1020, 1061. But none of the proffered evidence rises to the facts in *Donahoe*. Defendants had a valid judgment against Mark Stuart. They properly attempted to collect on that judgment. There is no evidence that they did so to retaliate against Plaintiffs. Accordingly, the Court grants summary judgment to Defendants on Plaintiffs' intentional infliction of emotional distress claim.

5. Count Ten: Defamation Per Se

Defamation requires proof that a defendant published a false statement that is defamatory in reckless disregard for the truth. *See, e.g., Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315 (1977). "One who publishes a false and defamatory communication concerning a private person ... is subject to liability if, but only if, he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them." *Dube v. Likins*, 167 P.3d 93, 104 (Ariz. Ct. App. 2007) (internal quotations and citations omitted). "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Turner v. Devlin*, 174 Ariz. 201, 203–04 (1993).

Defendants argue that Plaintiffs have "admitted that they have no evidence to support this claim." (Doc. 132 at 12). In response, Plaintiffs point to a statement made by defendant Anderson: "Mr. Stuart was essentially operating a failing business on the verge of bankruptcy." (Doc. 139 at 31). Furthermore, Plaintiffs believe that they can elicit proof of the defamatory statements with Anderson, Washburn, and Lane's testimony at trial, based upon the redacted emails. (Doc. 139 at 31).

Other than providing the statement, Plaintiffs have failed to show how the statement by Anderson satisfies the requirements for defamation. First, Plaintiffs have not shown that the statement is false. "Substantial truth is an absolute defense to a defamation action in Arizona." *Read v. Phx. Newspapers, Inc.*, 169 Ariz. 353, 355 (1991). Additionally, Anderson's statement falls under absolute privilege. "'[J]udges, parties, lawyers, witnesses and jurors' are 'absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which' they participate, if the defamatory publication 'relate[s] to, bear[s] on or [is] connected with the proceeding.'" *Goldman v. Sahl*, 248 Ariz. 512, 520 (Ariz. Ct. App. 2020) (quoting *Green Acres Trust v. London*, 141 Ariz. 609, 613 (1984)). As Anderson's statement came from an interrogatory

during this case, the Court finds that Anderson's statement falls under the absolute privilege for statements made in judicial proceedings and, therefore, cannot be the basis for a defamation claim. While Plaintiffs assert that they can elicit proof of the defamatory statements during testimony at trial is not enough to rebut the burden for summary judgment purposes. The Court will grant the motion for summary judgment on this claim.

### 6. Count Nine: Loss of Consortium

"[B]ecause loss of consortium is a derivative claim, . . . all elements of the underlying cause must be proven before the claim can exist." *Barnes v. Outlaw*, 964 P.2d 484, 487 (Ariz. 1998) (en banc) (internal citation omitted). Defendants argue that Plaintiffs have failed to prove any underlying claim and that cannot prevail on a loss of consortium claim. (Doc. 132 at 4). Plaintiffs argue that the evidence in the record shows that they have experience loss of consortium and that a jury could find for them on several counts. (Doc. 139 at 31). Because this Court has concluded that Defendants are entitled to summary judgment on all of Plaintiffs' other claims, the Court grants Defendants summary judgment on Plaintiffs' loss of consortium claims.

### D. Plaintiff's Motion to Not Impose Disclosure Sanctions (Doc. 149)

In Defendants' reply brief in support of their Motion for Summary Judgment, they raised objections to the inclusion of alleged undisclosed documents in Plaintiffs' response brief. (Doc. 142 at 2-3). "Pursuant to Gen. Order 17-08 and Fed.R.Civ.P. Rule 37(b)(2), Defendants object and move to strike all undisclosed testimony, documents, facts, and legal theories." (Doc. 142 at 3). Plaintiffs have filed a motion requesting that the Court not impose disclosure sanctions, arguing that "there was no non-disclosure" and there was no harm to the Plaintiffs. (Doc. 149).

"Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence," such that "litigants can escape the 'harshness' of exclusion only if they prove that the discovery violations were substantially justified or harmless." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733 (9th Cir. 2021) (citation omitted). Nevertheless, "[t]he automatic nature of the rule's application does not mean that a district court must

exclude evidence that runs afoul of Rule 26(a) or (e) . . . . Rather, the rule is automatic in the sense that a district court may properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless." *Id.* (citation omitted).

Here, Plaintiffs failed to timely disclose evidence used in their response brief. However, the evidence did not make a difference in determining the merits of the case. Thus, the Court declines to impose discovery sanctions on Plaintiffs and will deny Plaintiffs' Motion (Doc. 149) as moot.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Correct (Doc. 124) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment (Doc. 108) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 132) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Not Impose Disclosure Sanctions (Doc. 149) is **DENIED** as moot.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants and against Plaintiff for the reasons stated in this and all prior orders, which taken together resolve all claims against all Defendants in Defendants' favor.

Dated this 9th day of March, 2022.

James A. Teilborg
Senior United States District Judge